UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHEN STERN,

                     Plaintiff                  Case No. C2-05-907
                                             District Judge Sargus
     vs.                                  Magistrate Judge Abel

BRYAN H. FELMET, ET AL.

                    Defendants

OPINION AND ORDER

Plaintiff Stephen Stern (Stern or Plaintiff) is a former Prosecuting Attorney of Jefferson County, Ohio,[1] who is now resident in the state of Florida.  He has filed this action against twelve named individuals,[2] two corporations, and the law firm of one of the named individuals, all allegedly resident or having principle place of business in Ohio.  This action was filed on September 30, 2005, seeking compensatory and punitive damages in nine separate counts alleging various civil wrongs by some or all of the Defendants, all generally having to do with investigation of Ohio Public Employees' Retirement Service disability retirement benefits that Plaintiff began receiving in 2001 and with a political campaign for the office of county prosecutor in 2004.[3]  Plaintiff asserts that this Court has jurisdiction pursuant to  28 U.S.C. §1332 based on diversity of citizenship of the parties, as well as pursuant to 28

---

1. From "1981 thru 2000" according to allegations of his Complaint.  Doc. 1, ¶ 18.

2. Plaintiff also includes three "John/Jane Doe" defendants.

3. Plaintiff had been defeated for re-election in 2000, prior to the alleged injury in 2001 that led to his disability retirement award.  Doc. 1, ¶¶ 58, 19-20.

U.S.C. §§ 1331 and 1367 based on the single claimed federal violation of 42 U.S.C. §1983 contained in Count VIII.

All named Defendants have filed Answers (see Docs. 2, 12, 13, 14, 15, 16, and 40) and in some cases Amended Answers (see Docs. 37, 52 and 53). The case is now before the Court on individual or joint motions by several of the Defendants, all represented by the same law firm, for judgment on the pleadings as provided for in Rule 12(c) of the Federal Rules of Civil Procedure: Doc. 44 , Motion by Defendants Michael Crites, Rich, Crites & Dittmer, LLP, Gary Roundtree, and Intellinorth Investigations, Inc.; Doc. 45, Motion by Defendant John Corrigan; and Doc. 84-1, Motion by Defendants Bryan and Kim Felmet. Also pending before the Court at this time are Plaintiff Stern's Rule 72 , Fed.R.Civ.P., Objections to the Magistrate Judge's Order (Doc. 86) that denied Stern's Motion For Leave to Amend His Complaint (Doc. 64). Because that amendment seeks to add two paragraphs of factual allegations mentioning some of the Defendants making the above motions for judgment on the pleadings, the Court deems it necessary to rule on these objections before consideration of those Rule 12(c) motions.

As indicated by the Court's Docket, relevant events in this case preceding the Magistrate Judge's ruling to which Plaintiff Stern has objected include the following. The Magistrate Judge's Preliminary Pretrial Order of February 23, 2006, provided that motions to amend were due by April 21, 2006. Doc. 21. On May 19, 2006, Defendants Michael Crites, Rich, Crites & Dittmer, LLP, Gary Roundtree, and Intellinorth Investigations, Inc. filed Motion for Judgment on the Pleadings, with response due by June 12. Doc.44. On May 24, Defendant John Corrigan also

filed Motion for Judgment on the Pleadings, with response to that motion due by
June 19. Doc. 45. On June 8, 2006, two groups of defendants, Michael Crites, Rich,
Crites & Dittmer, LLP, Gary Roundtree, and Intellinorth Investigations, Inc. and
Bryan and Kim Felmet, filed Amended Answers (Docs. 52, 53) pursuant to leave
granted that date by the Magistrate (Doc. 51) in response to earlier motions by
those parties (Docs. 33, 34). On June 12, 2006, Plaintiff Stern requested an ex-
tension of time to June 19 (Doc. 54) for his response to the Crites etc. Motion for
Judgment on the Pleadings (Doc. 44), which was then granted by the Magistrate
Judge (Doc. 59), thus making Stern's responses to the two then-pending judgment-
on-the-pleadings motions (Docs. 44 and 45) due on the same day, June 19, 2006.

On June 19, 2006, Plaintiff filed four documents, all clearly related to the two
motions for judgment on the pleadings: Doc. 62, a motion to convert the Defendant
Crites etc. motion (Doc. 44) into a motion for summary judgment; Doc. 63, a motion
to extend the time for response to such motion until April, 2007; Doc. 64, the motion
for leave to amend the Complaint with amended complaint attached; and Doc 65, a
response to Defendant Corrigan's motion for judgment on the pleadings (Doc. 45).
As stated in Plaintiff's motion for leave to file, the tendered amended complaint did
not seek to add claims or causes of action, but only to add two paragraphs (28 and
29) containing essentially factual allegations concerning Defendant Corrigan's is-
suance of a subpoena to the Ohio Public Employees Retirement System and the re-
sulting delivery of records to Defendant Rich, Crites & Dittmer, LLP. Doc. 65, p. 1.

3

Only one of the two defendants named in the amendment, John A. Corrigan, filed an opposition to the motion for leave to amend.  He argued that allowing the amendment "would inject futile claims and undue delay into the action," (Doc. 71, p. 2) and also referred to the April 21st deadline for amendment to the pleadings set in the Magistrate's Preliminary Pretrial Order (Doc. 21).  Thereafter, on August 7, 2006, the Magistrate Judge concluded: "Plaintiff has not demonstrated good cause for modifying the scheduling order;" and denied the motion for leave to amend.  Doc. 86, p. 2.  Plaintiff's timely objections followed (Doc. 89), and Defen-dant responded in support of the Magistrate Judge's Order.  Doc. 92.

As noted in the Magistrate Judge's Order, this Court's consideration of Plain-tiff's objections is controlled by provisions of 28 U.S.C. §636(b)(1)(A) and Rule 72(a), Fed. R. Civ. P.  Consequently, as provided in the rule, the Court is to modify or set aside any portion of the order found to be "clearly erroneous or contrary to law."  In applying this rule, however, the Court agrees with Judge Kinneary's analysis in Gandee v. Glaser, 785 F.Supp. 684 (S.D. Ohio 1992):

> The "clearly erroneous" standard applies only to factual findings made by the Magistrate Judge, while her legal conclusions will be reviewed under the more lenient "contrary to law" standard.  See *Fogel v. Chest-nutt*, 668 F.2d 100, 116 (2d Cir.1981), cert. denied sub nom. *Currier v. Fogel*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Jernryd v. Nilsson*, 117 F.R.D. 416, 417 (N.D.Ill.1987).  This Court's review under the "contrary to law" standard is "plenary," *Jernryd*, 117 F.R.D. at 417, and it "may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 205 (N.D.Cal.1983).  Thus, this Court must exercise its independent judg-ment with respect to a Magistrate Judge's legal conclusions. See *Haw-kins v. Ohio Bell Tel. Co.*, 93 F.R.D. 547, 551 (S.D.Ohio 1982), aff'd

4

without op., 785 F.2d 308 (6th Cir.1986); *United States for Use and*

*Benefit of Naberhaus-Burke v. Butt & Head, Inc.*, 535 F.Supp. 1155 (S.D
Ohio 1982).

Id. at 686.

Because, as noted above, the Magistrate Judge expressly based his denial of

leave to amend upon Defendant's failure to demonstrate good cause for modifying

the amendment deadline in the already-existing Pretrial Order, the question pre-

sented for this Court's review is initially more limited than it would be, otherwise.

> ....[O]nce a district court's scheduling order's deadline for amending the
> pleadings passes, a plaintiff first must show good cause under Rule
> 16(b) for failure earlier to seek leave to amend before a court will con-
> sider whether amendment is proper under Rule 15(a). *Leary v. Daesch-
> ner*, 349 F.3d 888, 909 (6th Cir.2003). The primary measure of Rule
> 16's good cause standard is the moving party's diligence in attempting
> to meet the case management order's requirements. *Inge v. Rock
> Financial Corp.*, 281 F.3d 613, 625 (6th Cir.2002). This Court must
> also evaluate the prejudice to the opponent before modifying the
> scheduling order. *Leary*, 349 F.3d at 909.

Ford v. Hamilton County Juvenile Court, No. 1:05cv557. 2006 WL 2773101, *1 (S.D.

Ohio, Sept. 25, 2006, Barrett, J.). As did the Ford, court in similar circumstances,

however, this Court concludes that timing of the request here and the lack of ap-

parent prejudice to the opposing party show good cause for amending the sched-

uling order. See, e.g., Tefft v. Seward, 689 F.2d 637 (6th Cir. 1982); Moore v. City of

Paducah, 790 F.2d 557 (6th Cir. 1986); Inge v. Rock Financial Corp., 281 F.3d 613,

626 (6th Cir. 2002) (no prejudice to opposing party in plaintiff seeking leave to file

amended complaint several months after pleadings closed, following adverse ruling

on opposing party's motion to dis-miss, where no new claims or parties added);

McNeal v. City of Hickory Valley, Tenn., No. 01-1205, 2002 WL 1397249 (W.D.

Tenn. June 4, 2002).

In this case, the motion for leave to amend, with the proposed amendment attached, was filed June 19, 2006, two months after amendments to the pleadings had been closed (April 21, 2006) under the Magistrate Judge's original scheduling order. The motion was filed before the close of discovery (Feb. 23, 2007) or the date for filing case-dispositive motions (April 6, 2007). Doc. 21. The proposed amendments were prompted by certain of the defendants filing intervening motions for judgment on the pleadings,[4] and the amendments were submitted together with timely responses to those motions. Further, the amendments here do not seek to add either parties or causes of action   Based on the timing and nature of amendments in question here, the proposed amendment cannot be considered so different from the original complaint as to prejudice Defendants. Cf. Moore at 561 (quoting Tefft); Inge at 626.

In Inge, in circumstances very similar to those presented here, our circuit concluded that "the district court abused its discretion in denying leave to amend based on an absence of good cause" and reversed the order. Id. at 626-27. In light of that case and the others cited above, this Court is constrained to conclude that failing to find good cause for modifying the scheduling order and to permit the requested amendments here is contrary to law established in case precedent and that such ruling properly must be set aside and the requested leave to file the amended complaint granted. The Court will therefore proceed to consideration of the pending

_____

4. Certain of the moving defendants are mentioned in the proposed amendments.

motions for judgment on the pleadings on the basis of such amended complaint, accepting all factual allegations of the amend complaint as true for purposes of that consideration, as required by applicable law (see below),

The complaint in this case names twelve individuals, two corporations, and a law firm as defendants in some or all of nine separate counts. Each of the three motions for judgment on the pleadings now before the Court relies in greater or lesser degree on the argument that there is a failure to state a claim upon which may be granted. A motion for judgment on the pleadings for such reason is expressly permitted at this time by Fed. R. Civ. P. 12(h). When this Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, the motion is subject to analysis under the same standard as that applied in ruling on a Rule 12(b)(6) motion. <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 11 (6th Cir. 1987). As explained by our circuit, in making this ruling:

> .... The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Allard* [*v. Weitzman (In Re DeLorean Motor Co.)*, 991 F.2d 1236 (6th Cir. 1993)] ... at 1240; *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Allard*, 991 F.2d at 1240; *Mayer*, 988 F.2d at 638. Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Allard*, 991 F.2d at 1240; *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990).

> However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *Allard*, 991 F.2d at 1240. "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.' " *Ibid.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

> See also *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.
> 1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions
> and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve
> Bank*, 823 F.2d 928, 930 (6th Cir.) (per curiam) (mere conclusions are
> not afforded liberal Rule 12(b)(6) review), cert. denied, 484 U.S. 945,
> 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).

Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995).

Stated another way, the motion tests whether the plaintiff has stated a claim for which the law provides relief.  See Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994).  Consequently, as applicable here, the Count will not dismiss a count unless there is no law to support the claim made, the facts alleged are insufficient to state the claim, or there is an insurmountable bar to the claim on the face of the complaint.[5]  See Rauch v. Day and Night Mfg. Corp., 356 F.2d 697, 702 (6th Cir. 1978).

Motion of Defendant John A. Corrigan –

Defendant John A. Corrigan is identified as Clerk of Courts of Jefferson County, Ohio.  Doc. 64-2, ¶ 6.  He is expressly named in four of the Amended Complaint's nine counts (VI, Abuse of Process; VII, Malicious Prosecution; VIII, violation of 28 U.S.C. §1983; and IX, Invasion of Privacy), and he is presumably included by reference as one of the "defendants" named without specific identification in two other counts (II, Civil Conspiracy, and V, Intentional Infliction of Emotional Distress).[6]  As pointed out by Defendant Corrigan, the only specific factual alle-

---

5. Such as want of jurisdiction, lack of standing, bar of limitations, or the like.

6. Both Plaintiff and Defendant Stern are apparently under the impression that he is included in Count IV.  The Court, however, reads the reference to "Defendants" in the Amended Complaint's ¶ 83 as properly limited to the three defendants expressly named in the immediately preceding paragraph, viz., Defendants Marshall, Smith,

gations against him concern the September 2004 issuance by his office of a particular grand jury subpoena and delivery of records subpoenaed therein to the offices of Defendant D. Michael Crites who at the time had been sworn in as a Special Prosecutor in Jefferson County. Doc. 45, p. 2: Doc. 64-2, ¶¶ 13, 28, 29, 56, 56, 91.

Corrigan's Motion for Judgment on the Pleadings (Doc. 45) first attacks Plaintiff's federal civil rights claim contained in Count VIII of his Amended Complaint alleging violation under 42 U.S.C. §1983. In pertinent part, that section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

By its terms, this statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere (see Baker v. McCollan, 443 U.S. 137, 140, 144, n. 3 (1979)), and it has long been understood that use of the statute has two basic requirements: "(1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). In the count in question here, that federal law must be found in the Constitution, itself, because Plaintiff expressly claims "violation of privacy interest and liberty interest as provided under the First, Fourth, Fifth, and Fourteenth Amendments," and no other federal law establishing sub-

_____

and Argo).

stantive rights is referenced. Doc. 64-2, ¶ 95.

Among several other defensive theories, Defendant Corrigan asserts that he is entitled to quasi-judicial (absolute) immunity and/or qualified immunity, either barring this federal claim for money damages because it is based on his issuance of a subpoena, an act performed as part of his Clerk of Court duties. Doc. 45, p. 6. Defendant expressly relies on <u>Foster v. Walsh</u>, 864 F.2d 416 (6th Cir. 1988), and Ohio Revised Code §§ 2939.12 and 2945.45. Doc. 45. p. 3.[7] Plaintiff's twenty-line response to Defendant's motion (Doc. 65) contains no discussion of these immunity defenses or any contrary authority.

With respect to money damages, the <u>Foster</u> case stands generally for the proposition that "judges and other court officers enjoy absolute immunity from [§1983] suit on claims arising out of the performance of judicial or quasi-judicial functions." <u>Id.</u> at 417 (citing <u>Pierson v. Ray</u>, 386 U.S. 547 (1967); <u>Denman v. Leedy</u>, 479 F.2d 1097 (6th Cir. 1973)). This immunity applies irrespective of alleged mistake or even malicious or corrupt motive. See <u>Davis v. McAteer</u>, 431 F.2d 81, 82 (8th Cir. 1970). It has been said that the proper inquiry is whether the act in question is judicial in nature, and that does not depend on whether it is discretionary, but rather upon the act's relationship to the judicial process. <u>Foster</u> at 417-18 (Clerk's issuance of an arrest warrant at judge's direction a "truly judicial act" warranting absolute immunity); see also <u>Bush v. Rauch</u>, 38 F.3d 842, 847 (6th Cir.

_____

7. At another point, Defendant also cites § 293<u>2.12</u> (Doc. 45. p. 6), but there is no such section in the Ohio Revised Code. It is probable that § 293<u>9.12</u>, which refers to the Clerk's duty to issue subpoenas when required by a grand jury, prosecuting attorney, or judge or, possibly, § 293<u>7.19</u>, referring to authority of magistrates, judges, and clerks of court to issue subpoenas for witnesses or documents, was intended.

1994) (quasi-judicial immunity extends to persons performing tasks so integral to or intertwined with the judicial process as to be considered an arm of the judicial officer who is immune).

As has been recognized elsewhere, however, the Supreme Court's unanimous opinion in <u>Antoine v. Byers & Anderson, Inc.</u>, 508 U.S. 429 (1993) (holding court reporters entitled only to qualified immunity, not absolute immunity), casts doubt on such broad, arm-of-the-absolutely-immune-court analysis where clerks of court are concerned. See <u>Woodard v. Mennella</u>, 861 F.Supp. 192, 196 (E.D.N.Y. 1994); <u>Snyder v. Nolen</u>, 380 F.3d 279, 286-89 (7th Cir. 2004);. In reaching its <u>Antoine</u> decision, the Supreme Court explained:

> We are also unpersuaded by the contention that our "functional approach" to immunity, see *Burns v. Reed*, 500 U.S., at 486, 111 S.Ct., at 1939, requires that absolute immunity be extended to court reporters because they are "part of the judicial function," see 950 F.2d, at 1476. The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. <u>Accordingly, the "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."</u> 500 U.S., at 500, 111 S.Ct., at 1946 (SCALIA, J., concurring in judgment in part and dissenting in part). <u>When judicial immunity is extended to officials other than judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges – that is, because they, too, "exercise a discretionary judgment" as a part of their function.</u> *Imbler v. Pachtman*, 424 U.S., at 423, n. 20, 96 S.Ct., at 991, n. 20. Cf. *Westfall v. Erwin*, 484 U.S. 292, 297-298, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988) (absolute immunity from state-law tort actions available to executive officials only when their conduct is discretionary).

508 U.S. 435-36 (footnote omitted)(emphasis supplied).

Upon consideration of Ohio Revised Code §§ 2939.12 and 2937.19 (referred to in footnote 8, above) together with §2945.45 (providing for the clerk to issue criminal subpoenas to any county) and also Ohio Criminal Rule 17 providing further detailed procedures for issuance, service, and return of "[e]very subpoena issued by the clerk," the Court concludes it is simply premature, in absence of developed facts, to finally determine whether these acts were "ministerial" rather than judicial. Snyder at 288. Having them performed may well be essential to the judicial process; however, as the Court further noted in rejecting that rationale for absolute immunity in Antoine, "As we explained in Forrester, some of the tasks performed by judges themselves, 'even though they may be essential to the very functioning of the courts, have not ... been regarded as judicial acts.' 484 U.S. at 228." 508 U.S., 437. Thus, although language in certain, particularly older, cases might suggest otherwise, it appears that quasi-judicial immunity does not operate to bar the claim against Defendant Corrigan based on his issuance of the subpoena as alleged in this case. That is so because such action required by statute in certain circumstances cannot reasonably be characterized as comparable to performing the (judicial) function "of resolving disputes between parties or of authoritatively adjudicating private rights," even though such action might be considered performance of a task integral to the judicial process as provided by Ohio law. Id. 437-38.

Defendant's other immunity claim, qualified immunity, requires initial consideration of the basic nature of Plaintiff's §1983 claim. As explained by the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), such immunity provides that "government officials performing discretionary functions, generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

In considering a claim of such immunity at this stage of a case, the court is required first to determine if, taken in a light most favorable to the plaintiff, the complaint alleges violation of a constitutional right at all.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  "*Saucier* requires lower courts to decide (1) the constitutional question prior to deciding (2) the qualified immunity question." Brosseau v.Haugen, 543 U.S. 194,  201 (2004) (Breyer, J., concurring). "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged." Saucier at 200.

The factual allegations involving this Defendant, in addition to his being the Jefferson County Clerk of Courts (Doc. 64-2, ¶ 6), are that he "issued a subpoena under his name to the Ohio Public Employee Retirement System ordering the pro- duction of 'any and all' of Plaintiff Stern's documents and records in violation of Ohio law, including the Ohio administrative Code" and that he (Corrigan) "did not take possession of the records, but had them delivered to Defendant Rich, Crites & Dittmer located in Columbus, Ohio." Doc. 64-2, ¶¶ 28, 29.  In ¶ 91 Plaintiff further alleges that "issuance of ... [such] Grand Jury Subpoena ... was without authority, in violation of law, furthered the malicious prosecution of plaintiff and constituted abuse of process."  Finally, Plaintiff makes general allegations applicable to all or some of the defendants including Defendant Corrigan respecting the nature of their

13

"collective intent," "motivation," and/or "collective action," including that the latter was "wanton, wilful, intentional and with malice." Id., ¶¶ 68-71. On this basis, Count VIII claims this Defendant violated Plaintiff's privacy and liberty interests under "the First, Fourth, Fifth and Fourteenth Amendments" in violation of §1983. Id., ¶ 91.

Viewed in a light most favorable to Plaintiff, these allegations together with others in the Amended Complaint amount, at most, to a charge that this Defendant intentionally and maliciously misused the subpoena power of his state office to un-lawfully obtain Plaintiff's records from the State of Ohio's retirement system and permit them to be delivered to the law firm of a state special prosecutor who may not have fully qualified for his appointment, all in furtherance of an alleged con-spiracy to abuse process and maliciously prosecute Plaintiff. The Court concludes that such allegations do not support Plaintiff's claim of §1983 violation because they are insufficient to show violation of any constitutional protection.

The Court finds nothing whatever in the Amended Complaint to suggest any violation of the First Amendment's guarantees respecting freedom of speech and religion. With respect to possible application of the Fourth Amendment in this case, the Court agrees with the analysis found in Miller v. City of Columbus, 920 F.Supp. 807 (S.D. Ohio 1996):

> The specific guarantees of the first Eight Amendments to the United States Constitution prescribe limits to the exercise of govern-ment authority in particular situations. *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir.1996). "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a partic-ular sort of government behavior, 'that Amendment, not the more

14

generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Albright*, 510 U.S. at ----, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)).

* * *　　　　* * *　　　　* * *

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, protects not only criminal suspects but also limits governmental intrusions in civil contexts. *Flatford v. City of Monroe*, 17 F.3d 162, 169 (6th Cir.1994). The text of the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and person or things to be seized.

Id. at 816-17 (footnote omitted). The text of this Amendment simply does not apply to the factual circumstances of this case. Assuming issuance of the subpoena in question constituted action under color of state law, Plaintiff had no constitutionally protected legitimate expectation of privacy in the records obtained. They were *not* Plaintiff's records, and they were *not* seized from his person, house, or any other place under his control. At most, they are records kept by an agency of the State of Ohio *related to* Plaintiff's public employment. Presumably, Ohio could have made such records completely public or provided any degree of privacy it chose without involving restrictions of the Fourth Amendment. If Plaintiff has rights related to the manner in which the records in question came into the hands of the Defendants in this case, those rights are created by the laws of the State of Ohio, not by the Fourth Amendment to the United States Constitution.

With respect to Plaintiff's claimed violations of privacy and liberty interests under the Fifth and Fourteenth Amendments, the Amended Complaint is plainly inadequate as well. As the observed in <u>Albright v. Oliver</u>, 510 U.S. 266 (1994):

> .... The common law of torts long recognized that a malicious prose-cution, like a defamatory statement, can cause unjustified torment and anguish--both by tarnishing one's name and by costing the accused money in legal fees and the like.... We have held, of course, that the Due Process Clause protects interests other than the interest in free-dom from physical restraint, see *Michael H. v. Gerald D.*, 491 U.S. 110, 121, 109 S.Ct. 2333, 2340, 105 L.Ed.2d 91 (1989), and for purposes of this case, we can assume, arguendo, that some of the interests granted historical protection by the common law of torts (such as the interests in freedom from defamation and malicious prosecution) are protected by the Due Process Clause. Even so, <u>our precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be challenged under 42 U.S.C. § 1983 so long as the State pro-vides an adequate postdeprivation remedy</u>. Parratt v. Taylor, 451 U.S. 527, 535- 544, 101 S.Ct. 1908, 1912-1917, 68 L.Ed.2d 420 (1981); see *Hudson v. Palmer*, 468 U.S. 517, 531-536, 104 S.Ct. 3194, 3202--3205, 82 L.Ed.2d 393 (1984); *Ingraham v. Wright*, 430 U.S. 651, 674--682, 97 S.Ct. 1401, 1413-1418, 51 L.Ed.2d 711 (1977); *id.*, at 701, 97 S.Ct., at 1427 (STEVENS, J., dissenting) ("adequate state remedy for defa-mation may satisfy the due process requirement when a State has impaired an individual's interest in his reputation").

<u>Id.</u> at 283-84 (Kennedy, concurring) (some citations omitted) (emphasis added): see also, <u>Snyder v. Nolen</u>, 380 F.3d 279, 298 (7th Cir. 2004) ("<u>Parratt</u> and its progeny stand for the proposition that a random and unauthorized deprivation of property by a state employee does not constitute a violation of procedural due process so long as the state provides a meaningful post-deprivation remedy for the loss."). The acts in question in this count are random, allegedly unauthorized acts against Plaintiff not caused by any state law, policy, or procedure, and the other eight counts of his complaint amount to a recital of the potential state law remedies available to him

16

for their redress.

Insofar as it might be argued that Count VIII states a claim for violation of Plaintiff's substantive due process rights, the Amended Complaint is still deficient. The Supreme Court's reliance on substantive due process has generally been quite limited.

> .... "As a general matter, the Court has always been reluctant to ex-pand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, pro-creation, and the right to bodily integrity. See, e.g., *Planned Parent-hood of Southeastern Pa. v. Casey*, 505 U.S. 833, 847-849, 112 S.Ct. 2791, 2804-2806, 120 L.Ed.2d 674 (1992). (describing cases in which substantive due process rights have been recognized).

Albright at 271-72 (quoting Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).

As observed by the First Circuit:

> .... *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).... would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983 – superseding even *Torres'* [893 F.2d at 409] very limited tolerance of reliance on substantive due process in this area. Four Justices concluded that a section 1983 claim alleging mali-cious prosecution cannot be predicated on "open-ended" conceptions of substantive due process. See *id.* at ----, 114 S.Ct. at 810-19 (Opinion of Rehnquist, C.J., joined by O'Connor, Scalia, and Ginsburg, JJ.).

Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994).

As well as to malicious prosecution, this basic analysis of substantive due process claims has been applied to improper disclosure of personal information (Alexander v. Peffer, 993f.2d 1348 (8th Cir. 1993)), defamation (Ferencz v. Hairston, 119 F.3d 1244 (6th Cir. 1997), and invasion of privacy (Melton v. Board of Commis-

sioners of Hamilton County, 267 F.Supp.2d 859 (S.D. Ohio 2003).  Even in older

cases, courts have been reluctant to find violation of substantive due process.

> .... Where plaintiff has not been physically abused, detained, prose-
> cuted due to racial or political motivation or otherwise deprived of
> equal protection of the law, courts are reluctant to find "conscience-
> shocking" conduct that would implicate a constitutional violation.  See,
> e.g., *Barnier*, 810 F.2d 594 (police officers' filing of an unwarranted
> assault and battery charge against plaintiff was not "conscience-
> shocking"); *Johnson v. Barker*, 799 F.2d at 1400 (where plaintiff was
> not physically abused or incarcerated, and conduct was not "brutal,"
> baseless charges did not rise to the magnitude of substantive due pro-
> cess violation).  We emphasize that misuse of the legal process alone
> will not be enough to sustain a claim.  *Hand v. Gary*, 838 F.2d at 1424;
> *Whatley v. Philo*, 817 F.2d 19, 22 (5th Cir.1987) (plaintiff's claims that
> defendant filed charges solely to "vex and harass" him did not consti-
> tute constitutional tort).

Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 410 (1st Cir. 1990)

(referred to in Perez-Ruize, quoted above).  Neither do Plaintiff's conspiracy alle-

gations in this case present a viable claim.

> To demonstrate conspiracy under § 1983, plaintiff must show "an
> actual abridgement of some federally-secured right." *Nieves v. Mc-
> Sweeney*, 241 F.3d 46, 53 (1st Cir.2001) ("The fact that a plaintiff
> styles her claim as a conspiracy ... does not diminish her need to show
> a constitutional deprivation."); see *Earle v. Benoit*, 850 F.2d 836, 844
> (1st Cir.1988).  Plaintiff cannot resuscitate her failed constitutional
> claims to prove conspiracy.

Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 14 (1st Cir. 2003); see also Dean Tarry

Corp. v. Friedlander, 650 F.Supp. 1544, 1553 n.16[8]  (S.D.N.Y. 1987), aff'd 826 F.2d

---

8. "There is, however, no cause of action for conspiracy per se under section 1983.
Nor is there a cause of action for "conspiracy to deny due process." *Lesser v. Braniff
Airways, Inc.*, 518 F.2d 538, 540 n. 2 (7th Cir.1975).  Plaintiff must prove the de-
privation of a specifically-protected constitutional right to sustain the conspiracy
claim. See, e.g., *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977); *423 South
Salina Street, Inc. v. Syracuse*, 724 F.2d 26, 27 (2d Cir.1983).

210.

Count VIII's allegations do not touch on areas of law traditionally recognized as raising substantive due process considerations, nor do they suggest, even if they could be proved, "conscience-shocking" conduct that would implicate such a constitutional violation.  Further, because there is no Fourth Amendment violation alleged and there are adequate state-law remedies apparent for the random, unauthorized torts Plaintiff's alleges to support a claim that procedural due process has been denied, Plaintiff lacks a basis for proceeding under §1983.  The Court therefore concludes that Count VIII does not state a cause of action against Defendant Corrigan upon which relief can be granted, and he will be dismissed as a defendant in that count.

With respect to the remaining, state-law claims against him in other counts of the complaint,[9] Corrigan relies on arguments made by his counsel on behalf of Defendants Crites etc. in their Motion for Judgment on the Pleadings, "Doc. 44, § III.A-D." Doc. 45, p. 8.  The primary argument there claims immunity pursuant to provisions of Ohio Revised Code § 2744.03. As pertinent here, that section provides:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

---

9. Counts VI, Abuse of Process; VII, Malicious Prosecution; and IX, Invasion of Privacy; as well, arguably, as Counts II, Civil Conspiracy; and V, Intentional Infliction of Emotional Distress.

* * *                * * *                * * *

    (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
    (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
    (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
    (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

    (7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.

The immunity provided by this section expressly does *not* extend to acts allegedly carried out "with malicious purpose, in bad faith, or in a wanton or reckless manner." §2744.03(A)(6)(b). Allegations of several of the Amended Complaint's earlier paragraphs (especially ¶¶ 70 and 71), later incorporated by reference in each of the individual counts and asserting the defendants' actions were "wanton," done "with malice" and/or "with reckless disregard for the truth" are sufficient at this pleading stage to prevent application of subsection (A)(6) immunity to the state-law charges against this or, for that matter, any other Defendant. Further, because the Clerk of Court is not listed among those specifically named in subsection (A)(7) of §2744.03, he is not able to claim "any defense or immunity available at common law or estab-

20

lished by the Revised Code," as provided in that subsection.

As to the adequacy of the remaining counts against this defendant, the Court denies this Defendant's motion. The liberality of federal notice pleading, which requires only a minimum of detail, makes it impossible to say at this point that there is no set of facts, however un-likely, that Plaintiff might be able to prove under his pleadings (especially considering one is a conspiracy count that arguably may rely in part on torts alleged in any one of the other counts[10]) on which he might recover on any of those counts. For like reason, the Court is unable to rule on the more com-plex question presented by Defendant's claim of qualified immunity as to counts on which he may be found not absolutely immune and a cause of action adequately supported. Defendant Corrigan's motion for judgment on the pleadings will therefore be denied as to all state-law counts.

Motion of Defendants D. Michael; Crites, Rich, Crites & Dittmer LLC;, Gary Roundtree, and Intel North –

Defendant D. Michael Crites is identified as an Ohio attorney and partner in his co-defendant law firm of Rich, Crites & Dittmer. Plaintiff's Amended Complaint asserts that Crites was allegedly was appointed a special prosecutor by the Jefferson County Common Pleas Court on July 30, 2004. Doc. 64-2, ¶¶ 12,13,55,56.

---

10. According to Ohio law: "In a conspiracy the acts of coconspirators are attributable to each other. See Prosser & Keeton on Torts (5 Ed.1984, Section 46.('All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable.' [Footnotes omitted.])." Williams v. Aetna Finasnce Co., 83 Ohio St.3d 464, 475 (1998).

It is alleged that the appointment was made "without conducting any hearing" and that Crites "failed to undertake the necessary con-ditions precedent to becoming a duly authorized officer of the court." Id., ¶¶ 55,57. Defendant Crites is expressly named in only two counts of the Amended Complaint:  VIII, violation of 28 U.S.C. §1983; and IX, Invasion of Privacy; and he is arguably included by reference as one of the "defendants" named without specific identifi-cation in two other counts: II, civil conspiracy; and V, intentional infliction of emotional distress.  Other than those noted above, the only allegations clearly naming Defendant Crites are in ¶ 58, that without authority he "obtained the ap-pointment of Defendant Gary Roundtree an agent of Intell North Investigations, Inc., as an investigator to assist in the prosecution of Plaintiff Stern, and in ¶ 70, that, with other defendants, Crites was party to a "collective intent ...to subject Plaintiff Stern to investigation and prosecution of allegations and assertions that they knew or should have known were false or with reckless disregard for the truth."

Insofar as Crites is alleged to have been acting under color of state law, i.e., with respect to his alleged actions after his appointment as a special prosecutor on July 20, 2004, and for the reasons discussed above with respect to Defendant Cor-rigan, the Court concludes that Count VIII also does not state a cause of action for violation of 42 U.S.C. §1983 against Defendant Crites.  He will therefore be dis-missed as a defendant in that count.

With respect to the remaining, state-law claims, it is possible that Defendant Crites is entitled to common law absolute immunity as a "county prosecuting attor-

22

ney" pursuant to the provisions of Ohio Revised Code §2744.03(A)(7), quoted above.

> Under O.R.C. § 2744.03(A)(7), county prosecutors are entitled to any immunity available at common law. Id. It is well-settled common law in Ohio that prosecutors enjoy absolute immunity from suit for acts committed in their role as judicial officers. See, e.g., *Hawk v. Am. Elec. Power Co.*, No. 1-04-65, 2004 WL 2980656, at *2 (Ohio App. 3 Dist., Dec. 27, 2004); *Macko v. Mitrovich*, Nos. 7-082, 7-084, 1979 WL 208181, at *1 (Ohio App. 11 Dist., Oct. 1, 1979). Because the Court found that Prosecutor Sallerson's conduct in seeking Danielle's detention as a material witness fell within his role as an advocate for the State, the Court concludes as a matter of law that the tort claims against him are barred by statutory immunity.

Smeal ex rel. Smeal v. Alexander, N.D. Ohio Case No. 5:06 CV 2109, Nov. 30, 2006

(unpublished) 2006 WL 3469637 *9. Such immunity, however, does not extend to

all actions of a prosecutor.

> The Supreme Court has endorsed a "functional" approach in determining whether an official is entitled to absolute immunity. *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 542-43, 98 L.Ed.2d 555 (1988); *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). Under this approach, a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.' " *Buckley v. Fitzsimmons*, 509 U.S. 259, ----, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993)(quoting *Forrester*, 484 U.S. at 229, 108 S.Ct. at 545). For example, a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. *Id.* On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available. *Id.*

Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). Because the details of Defendant

Crites' appointment as a Special Prosecutor and the nature of his actions pursuant

thereto are not fully before the Court, it is not possible to rule on such immunity for

him at this point.

23

Further, as was the case with Defendant Corrigan, above, because of the liberality of federal notice pleading rules, requiring only a minimum of detail at this Rule 12(c) stage, the Court cannot conclude there is no set of facts that Plaintiff *might* be able to prove under his pleadings on which he might recover on any of the state-law counts naming Defendant Crites. Also, as in Defendant Corrigan's case, the Court is unable to rule now on the more complex questions presented by Defendant Crites' claim of qualified immunity as to counts on which he may ultimately be found not absolutely immune and the cause of action otherwise adequately supported. Defendant Crites' motion for judgment on the pleadings will therefore be denied as to all state-law counts.

Defendant Rich, Crites & Dittmer, LLC is alleged to be Defendant D. Michael Crites' law firm located in Columbus, Ohio. Doc. 54-2, ¶¶ 13, 56. In ¶ 29 of the Amended Complaint it is alleged that the law firm's offices were the delivery point for records produced by the Ohio Public Employee Retirement System in response to a subpoena issued by Defendant Corrigan on September 10, 2004. The only other place this Defendant is named anywhere in the Amended Complaint is in Count IX's ¶ 97, alleging that "ongoing and continuous conduct beginning in March 2004 and continuing thereafter" by this law firm and thirteen other named defendants[11] constituted "invasion of [Plaintiff's] privacy." Liberal as the Federal Rules may be with respect to the minimum requirements of notice pleading, the Court finds that these and any other of the Amended Complaint's pleadings are inadequate as to

_____

11. Defendant John Mascio is not included.

Count IX or any other cause of action against this Defendant. Rich, Crites & Dittmer, LLC will therefore be dismissed as a party defendant.

Defendant Roundtree of Dublin, Ohio, is alleged to be "an agent of Intel North Investigations, Inc." (now known as Intellinorth, Investigations, Inc), who allegedly was appointed "without authority" by Defendant Crites "as an investigator to assist in the prosecution of Plaintiff Stern." Doc. 64-2, ¶¶ 14, 58. No date is given, but it is further alleged that Defendant Roundtree "failed to undertake the necessary conditions precedent to becoming a duly authorized officer of the court." Id., ¶ 59. Roundtree is also named in the Amended Complaint's ¶ 70 alleging his and nine other defendants' "collective intent" to subject Plaintiff to investigation and prosecution which they "knew or should have known were false or with reckless regard for the truth." Paragraphs 68, 69, and 71 (making further generalized allegations as to "Each defendants' (sic) individual and collective intent" to injure Plaintiff, "Each defendants' motivation for their improper illegal and immoral conduct," and "Defendants' collective actions" being "wanton, wilful, intentional and with malice") also may be construed as including Defendant Roundtree. Paragraphs 85 and 86 in Count V also use the terms "defendants" and "all defendants," but only with the generalized allegation that their "various acts and omissions" amounted to intentional infliction of serious emotional distress to Plaintiff. In the separate counts that begin with ¶ 74 of the Amended Complaint, there is another general allegation in Count II's ¶ 77 that "Defendants (sic) various acts" constitute civil conspiracy, but the only counts that actually name Defendant Roundtree are

Count VIII, violation of 42 U.S.C. §1983 and Count IX, invasion of pivacy.

As with Defendant Rich Crites and Dittmer, above, the allegations of the Amended Complaint are plainly insufficient to state any cause of action against this Defendant. If there is any civil conspiracy alleged in this case at all, there simply are no sufficient allegations respecting Defendant Roundtree to support a claim that he was ever one of its conspirators. Merely being employed as an inves-tigator, without more, is not enough from which to infer joining a conspiracy. Fur-ther, for the reasons set out at length in ruling on Defendant Corrigan's and Defen-dant Crites' motions above, the Court finds there is no basis pled for proceeding against this Defendant on Count VIII for alleged violations under 42 U.S.C. §1983. Finally, there are also no sufficient factual allegations that Defendat Roundtree did or omitted anything that could support a charge of intentional infliction of emo-tional distress on Plaintiff, whatever his alleged intent or recklessness or malice. Defendant Roundtree will therefore be dismissed as a party defendant herein.

Lastly, Defendant Intell North Investigations, Inc. (now Intellinorth Investi-gations, Inc.) is identified as a for profit corporation located in Dublin, Ohio that al-legedly "without right or authority, wrongfully and maliciously became involved in the conduct" complained of in the Amended Complaint. Doc. 64-2, ¶ 15. In para-graph 58, Defendant Roundtree is alleged to be "an agent" of this Defendant, but nowhere else is it referred to by name except with Roundtree and the thirteen other defendants in Count IX, ¶ 97's summary allegation of invasion of Plaintiff's privacy. As with Defendant Roundtree, even less so with this defendant, there are no suf-

26

ficient factual allegations to support any claim made against it by the Amended Complaint in this case. Therefore, Defendant Intell North Investigations, Inc. (now Intellinorth Investigations, Inc.) will also be dismissed as a party defendant herein.

Felmets' Motion -

Defendant Bryan Felmet is identified as a candidate for Jefferson County Prosecutor and Plaintiff's opponent in the 2000 election. Doc. 64-2, ¶ 60. Felmet defeated Plaintiff for County Prosecutor in the 2000 election. Plaintiff vacated the office of County Prosecutor on December 31, 2000 and retired to Florida in 2001. Bryan Felmet sought re-election for the Prosecutor's position in 2004. Plaintiff did not run or otherwise participate in the 2004 Jefferson County Prosecutor's campaign. Kim Felmet is Bryan Felmet's wife, and is identified as the Treasurer for Bryan Felmet's 2004 campaign committee. Doc. 64-2, ¶ 62.

Plaintiff alleges only state law claims against the Felmet Defendants. Specifically, Plaintiff alleges that Defendants (1) defamed him (Count I); (2) entered into a civil conspiracy (Count II); (3) breached a fiduciary duty owed to him (against Mr. Felmet only) (Count III); (4) intentionally inflicted emotional distress (Count V); (5) abused process via the issuance of a grand jury subpoena (against Mr. Felmet only) (Count VI); (6) maliciously prosecuted him (against Mr. Felmet only) (Count VII); and (7) invaded his privacy (Count IX).

a.)    Kim Felmet

Plaintiff alleges that Kim Felmet published and broadcasted knowingly false statements about him that characterized him as a liar and a thief.  Plaintiff alleges that he sent Bryan and Kim Felmet a letter ordering them to cease and desist from broadcasting such statements, which they ignored. Plaintiff alleges that, during the 2004 campaign, Bryan and Kim Felmet sent a campaign mailer that also characterized him as a liar and a thief.  On November 12, 2004, Plaintiff sent a letter to Defendants Bryan and Kim Felmet notifying them of his intention to file suit for their alleged defamation about him.  Plaintiff alleges that both Bryan and Kim Felmet intended to injure Plaintiff's personal and professional reputation in the community and to expose Plaintiff to public ridicule.  He maintains that Defendants' collective actions towards Plaintiff were wanton, wilful, intentional and with malice.  Doc. 64-2, ¶¶ 62-71.  From these allegations, Kim Felmet is expressly named only in Count I for defamation and is presumably is included by reference as one of the unspecified "defendants" in Plaintiff's claims of civil conspiracy and intentional infliction of emotional distress.  Arguably, Kim Felmet is the "Felmet" mentioned in Plaintiff's intentional invasion of privacy claim.

The Court notes that Plaintiff has just minimally complied with is obligation under Rule 8 to sufficiently inform Kim Felmet of the nature of the claims against her.  Beyond this conclusion, however, the Court must again reject Defendants' arguments attacking the sufficiency of Plaintiff's pleading.  At this juncture of the case, the Court cannot say that no set of facts will support a cause of action against

Kim Felmet.

b.)    Brian Felmet

    1.)    Breach of Fiduciary Duty

In Count III of his Amended Complaint, Plaintiff includes Bryan Felmet among those Defendants who allegedly breached a fiduciary duty owed to him. Doc. 64-2, ¶ 80. The Ohio Supreme Court has defined a fiduciary as "'a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.'" Strock v. Pressnell, 38 Ohio St. 3d 207, 216 (Ohio 1988)(quoting Haluka v. Baker, 66 Ohio App. 308, 312, 34 N.E.2d 68, 70 (Ohio Ct. App. 1941)). Thus, Plaintiff must plead and prove: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe that duty; and (3) resulting injury. Strock, 38 Ohio St.3d at 216.

Here, Plaintiff has not alleged that any fiduciary relationship existed between himself and Bryan Felmet. He has not alleged that Felmet undertook any obligation to act for his benefit. Indeed, Plaintiff has apparently abandoned this claim as against Bryan Felmet as he did not address the claim or Defendants' arguments against it in his Memorandum in Opposition. For these reasons, Bryan Felmet is dismissed from Count III of Plaintiff's Amended Complaint.

    2.)    Remaining State Law Claims

For the reasons the Court has already specified with respect to the numerous named co-defendants, the notice pleading requirements of Rule 8 necessitate only minimal detail for purposes of the Rule 12(c) Motion. The Court must take as true

all well-pleaded allegations, which must be construed most favorably toward the Plaintiff. Schuer v. Rhodes, 416 U.S. 232, 236 (1974). At this stage, because this Amended Complaint can be construed to state a cause of action, the Motion to Dismiss Bryan Felmet as to the state-law claims is denied.

       3.)    Immunity

Similar to Co-Defendant Crites, Bryan Felmet asserts that he is entitled either to absolute prosecutorial immunity or qualified immunity under the state statute. Felmet correctly cites Willitzer v. McCloud, 6 Ohio St. 3d, 447, 449, 453 N.E.2d 693, 695 (Ohio 1983), for the proposition that claims against a prosecutor in his or her individual capacity are subject to the protections afforded by absolute prosecutorial immunity. "[P]rosecutors are considered "quasi-judicial officers" entitled to absolute immunity granted judges, when their activities are 'intimately associated with the judicial phase of the criminal process.'" Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Absolute prosecutorial immunity, however, does not extend to every act performed by a prosecutor, and, as the Court has previously described, a functional approach must be used to determine whether the official is entitled to it:

[W]hen a prosecutor "functions as an administrator rather than as an officer of the court" he is entitled only to qualified immunity. *Imbler*, 424 U.S., at 431, n. 33, 96 S.Ct., at 995, n. 33. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)(internal quotation marks

30

omitted), cert. denied, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974).
Buckley v. Fitzsimmons, 509 U.S. 259, 273-74 (1993).

Here, Plaintiff asserts that Felmet was acting in an investigative or
administrative capacity when he sought to have a special prosecutor appointed to
investigate him.  Because the details of the transactions leading to the appointment
of a special prosecutor and the ultimate role Felmet played, if any, in Plaintiff's
investigation are not yet at issue, the Court cannot rule on whether prosecutorial
immunity applies with respect to this subject.

The Court notes, however, to the extent Felmet argues it, he is not entitled to
absolute prosecutorial immunity for the allegedly defamatory remarks he made
concerning Plaintiff during the 2004 election for Jefferson County Prosecutor.
Buckley, 509 U.S. at 277 (noting that the prosecutor's "statements to the media are
not entitled to absolute immunity. . . . [M]ost statements made out of court receive[]
only good-faith immunity. . . .").

At this stage of the proceeding, the Court cannot conclude that Bryan Felmet
is entitled to immunity for the remaining state-law claims asserted against him.
The immunity of the Ohio Revised Code does not extend to acts allegedly carried
out "with malicious purpose, in bath faith, or in a wanton reckless manner."
§2744.03(A)(6)(b).  Plaintiff has specifically asserted that Bryan Felmet's actions
were "wanton," done "with malice" and/or "with reckless disregard for the truth,"
which is sufficient at this pleading stage to prevent the Court from applying
statutory immunity to the state-law claims.

Consistent with the forgoing, it is hereby ORDERED:

That Plaintiff's Objections (Doc. 89) to the Magistrate's Order (Doc. 86) which denied Plaintiff's Motion for Leave to Amend His Complaint are SUSTAINED, said denial is SET ASIDE, and the requested leave to file Plaintiff's First Amended Complaint (Doc. 64-2) is GRANTED. Defendant Corrigan named in paragraphs 28 and 29 added by the amendment shall answer within 20 days of this Order. The remaining defendants may answer within said time or will be deemed to have denied the allegations of said paragraphs for want of knowledge..

That Motion for Judgment on the Pleadings of Defendant Corrigan (Doc. 45) is GRANTED IN PART dismissing Corrigan as a defendant under Count VIII and DENIED IN PART as to all other counts of the Amended Complaint.

That Motion for Judgment on the Pleadings of Defendants D. Michael Crites; Rich, Crites & Dittmer LLC; Gary Roundtree; and Intel North Investigations, Inc. (Doc. 44) is GRANTED IN PART dismissing Defendant D. Michael Crites as a defendant under Count VII and Defendants Rich, Crites & Dittmer LLC; Gary Roundtree: and Intel North Investigations, Inc. as to all counts of the Amended Complaint and from the case. Said motion is DENIED IN PART with respect to Defendant D. Michael Crites as to all other counts of the Amended Complaint except Count VIII.

That the Motion for Judgment on the Pleadings of Defendants Bryan and Kim Felmet (Doc. 84) is GRANTED IN PART, dismissing Defendant Bryan Felmet

as a defendant under Count III and DENIED IN PART as to all claims asserted

against Kim Felmet and as to all other claims against Bryan Felmet.

IT IS SO ORDERED.

3 - 30 - 2007
Dated

Edmund A. Sargus, Jr.
United States District Judge

33